## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CAROLINE OVERTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CV-635-XR |
| | § | |
| SEABORN HEALTH CARE, INC., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment. Doc. No. 20.  After careful consideration, the Court GRANTS the motion.

## BACKGROUND

This case arises out of Plaintiff Caroline Overton's employment relationship with Defendant Seaborn Health Care Inc. ("Seaborn").  In 2010, Seaborn won a contract with the U.S. government to provide phlebotomy services at Lackland Air Force Base ("Lackland").   On September 30, 2010, Seaborn hired Ms. Overton to work as a phlebotomist at the Specimen Collection Center at Lackland.  Phlebotomists at Lackland have two main responsibilities: they draw blood and they check-in patients using a computer system.  At Seaborn, Ms. Overton reported to Jackie Amadio, Seaborn's President.  However, Seaborn did not have on-site supervisors at Lackland and so Ms. Overton worked directly under the supervision of Technical Sergeant ("TSgt") Anthony Furlough and Master Sergeant ("MSg.") Melissa Rea.

1

On May 16, 2011, Ms. Overton reported to Ms. Amadio that she had injured her right arm.  Ms. Overton claimed that the injury was caused by repeatedly drawing blood.  Her physician diagnosed her with lateral epicondylitis, more commonly known as tennis elbow.  Ms. Overton then inquired about the possibility of having her work routine changed so that she would not have to draw blood all day.  Seaborn accommodated this request, and for one month Ms. Overton drew blood for a half-day while staffing the front desk for the rest of the day.  This was the only request for any modification of work conditions that Ms. Overton made before she was discharged.

After resuming her normal job responsibilities for seven months, Ms. Overton's injuries re-appeared in late December, 2011.  This sparked a series of injury-related absences from work.[1]  Finally, on January 25, 2012, Ms. Overton saw her physician and was cleared to return to work with certain restrictions that were to remain in place until February 8, 2012.  These restrictions included a prohibition on using her right arm, wrist, or hand for more than two hours in a day.  She was also prohibited from using a keyboard and from lifting more than 20 pounds.

On January 26, 2012, Ms. Overton returned to work at the Specimen Collection Center at Lackland.  After drawing blood for two-hours, TSgt Furlough informed Ms. Overton that he interpreted her work restrictions as limiting her to two hours per day of work, after which point she was to return home.  The parties offer differing accounts of what unfolded next.  According to Seaborn, this set Ms. Overton off into a "tirade," during which time she "began waving her hands in the air and jabbing her finger at TSgt Furlough." Doc. No.  20.  Worse, this "outburst" allegedly occurred in full view of the service members, contractors, and patients in the Specimen

---

[1] On December 28, 2011, Ms. Overton provided a doctor's excusing her from work until January 2, 2012.  On January 3, Ms. Overton provided another note extending her medical leave until January 7.  Again, on January 6, Ms. Overton provided a third note excusing her until January 11.  Ms. Overton provided a fourth note on January 11, this one excusing her until January 23.

Collection Center.  *Id.*  According to Defendant, MSgt Rea was unable to calm Ms. Overton, who then left the Specimen Collection Center without resolving the dispute.  MSgt Rea then called Ms. Amadio to report the incident and exercised her contractual right to prohibit Seaborn from utilizing Ms. Overton on the Lackland phlebotomy contract.[2]  Ms. Overton then allegedly returned to the Specimen Collection Center and was thereafter escorted off base by security. *Id.*

Ms. Overton frames the events differently.  According to Ms. Overton, MSgt Rea and TSgt Furlough were never receptive to her work restrictions. Overton Dep. at 69. As the confrontation ensued, Ms. Overton claims that she was "upset, but not angry." *Id.* at 85-86. According to Ms. Overton's account there was no profanity and no hysterics.  She merely was trying to resolve the situation.  Ms. Overton claims to have been humiliated by the experience of having her access badge revoked. *Id.* at 97.  That same afternoon, Ms. Overton was terminated by Seaborn.

On June 28, 2012, Ms. Overton filed an original complaint in this Court.  Ms. Overton alleges that Seaborn violated the Americans with Disabilities Act ("ADA") by: (1) failing to provide her with reasonable accommodation for her disability; and (2) discriminating against her on the basis of her disability.  In addition, Ms. Overton brings a claim under § 451 of the Texas Labor Code, alleging that she was terminated in retaliation for filing a worker's compensation claim.  On September 13, 2013, Seaborn filed this motion for summary judgment.  Doc. No. 20.

## LEGAL STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the

---

[2] Plaintiff argues that it was Ms. Amadio who initiated the termination.

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## DISCUSSION

### 1. Americans with Disabilities Act Claims

The events underlying this lawsuit occurred after 2009, and so the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") governs the analysis. *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010) (ADAAA effective for all claims arising after January 1, 2009). The ADAAA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). "The threshold issue in an ADA case is the plaintiff's showing that she is disabled within the meaning of the ADA." *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998). Seaborn argues that Ms. Overton's tennis elbow does not count as a disability within the meaning of the statute. If this is the case, then her claims do not fall within the scope of the ADAAA and must be dismissed as a matter of law. An individual has a disability if they possess:

4

i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(ii) A record of such an impairment; or
(iii) Being regarded as having such an impairment as described in paragraph (l) of this section

29 C.F.R. § 1630.2.  In this case, Ms. Overton alleges that she has a qualifying disability under the first prong of the definition.  Major life activities include "performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2). The ADAAA implementing regulations now provide that the term "substantially limits" is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

It appears undisputed that Ms. Overton possessed a physical impairment that substantially limited her ability to engage in the major life activity of working for a three-month period beginning in December, 2011, and ending in March, 2012.[3]  Ms. Overton testified that her tennis elbow prevented her from grasping and squeezing without pain. Overton Dep. at 64.  Ms. Overton argues that it is important for a phlebotomist taking a blood sample to have dexterity and a full range of motion.  Ms. Overton also alleges that she experienced pain when typing, and could not lift her arm over her head.  Ms. Overton's physicians allowed her to return to work, but with the restriction that she could only use her arms for two-hours per day.  Although Seaborn argues to the contrary, for the purposes of this motion only the Court assumes that Ms. Overton had a disability within the meaning of the ADAAA.

_____

[3] Seaborn's argument is that a physical impairment lasting for a three-month period should not count as a "disability" under the ADA.  Doc. No. 20.  Seaborn appears to concede that Ms. Overton's tennis elbow substantially limits her when active.

5

    *a.  Failure to Accommodate Claim*

Ms. Overton alleges that Seaborn failed to accommodate her disability in violation of the ADAAA.  The statute requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 28 U.S.C. § 12112(b)(5)(A).  To establish a claim for failure to accommodate, a plaintiff must show that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 740 F.3d 450 (5th Cir. 2013*).*  The employee bears the burden of showing that the employer failed to implement a reasonable accommodation.  *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996).

In this case, Seaborn has shown that they sufficiently accommodated Ms. Overton, despite denying that she suffered from a qualifying disability.  Seaborn permitted Ms. Overton to work a modified schedule during the summer of 2011.  It granted Ms. Overton leave every time she requested it, and on January 26, 2012, permitted her to return to work with certain medical restrictions.  Ms. Overton does not dispute this factual record, and instead asserts that "whether Seaborn temporarily accommodated Ms. Overton prior to her discharge… is not at issue." Doc. No. 24 at ¶ 85.  Instead, Ms. Overton argues that Seaborn violated the ADAAA by not accommodating her when the dispute arose between her and her government clients on January 26, 2012. *Id.*

6

The core of Ms. Overton's argument is that "Seaborn's agent, MSgt Rea, refused to engage in the interactive process and refused to consider any accommodations." *Id.* at ¶ 87. This argument is flawed for two reasons.  First, MSgt Rea is not Seaborn's agent. MSgt Rea is Seaborn's client.  Second, MSgt Rea did consider accommodations according to Ms. Overton's own testimony.  On January 25, 2012, Ms. Overton's physician cleared her to return to work, albeit with restrictions on using her right arm, wrist, or hand for more than two hours in a day. She was also prohibited from using a keyboard and from lifting more than 20 pounds.  When Ms. Overton presented her restrictions, MSgt Rea apparently expressed some surprise that Ms. Overton would be released to work with these restrictions.  Overton Dep. at 68.   Ms. Overton testified that MSgt Rea, upon noting her restrictions, said that the Specimen Collection Center needed a contractor who could draw blood for eight hours. Overton Dep. at 69.  Ms. Overton told MSgt Rea that she could check-in patients after her two hours of drawing blood were up.  MSgt Rea considered this suggestion, but then noted that checking-in patients required typing on a computer, a restricted activity for Ms. Overton.  MSgt Rea did consider Ms. Overton's proposed accommodation, although she ultimately rejected it.

Seaborn argues that Ms. Overton never requested any other accommodation on January 26. A plaintiff must request that his or her employer make a reasonable accommodation.  *Taylor v. Principal Fin. Grp. Inc.*, 93 F.3d 155, 165 (5th Cir. 1996).  When the confrontation occurred on January 26 at Lackland, it was Ms. Overton who refused to participate in a conference call with Ms. Amadio to discuss how to interpret her restrictions.

Even if the Court assumes that Ms. Overton requested that Seaborn allow her to work for the remaining six hours of the business day in some other capacity, her claim still fails as a

matter of law.   An employer is only under an obligation to provide an employee with a reasonable accommodation, not the accommodation that the employee prefers. *Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 278 (5th Cir. 1999).  In her deposition testimony, Ms. Overton alluded to checking-in patients and training students as two potential accommodations that her Air Force clients, and by extension, Seaborn, failed to consider. However, both of these tasks would have required Ms. Overton to use her right arm in contravention of her doctor's orders.   Checking-in patients requires the use of a phone and computer, both of which in common experience require the use of arms.   Second, Ms. Overton claims that she should have been allowed to teach students.   However, the evidence shows that part of training students to draw blood includes being able to step in and "re-stick" the patient if the student fails to find the vein. Overton Dep. at 101.  This part of training students would have required Ms. Overton to use her right arm. *Id.*

Ms. Overton has failed to meet her burden of showing that the requested accommodations were "reasonable."   First, all of Ms. Overton's proposed accommodations would violate her doctor's restrictions by requiring the use of her right arm.   An accommodation that would violate a doctor's work restrictions is not reasonable.

Ms. Overton is arguing that she is disabled because she is substantially limited in her ability to engage in the major life activity of working. Working for Ms. Overton means: 1) drawing blood, 2) checking-in patients, and 3) training students.   If she is disabled under the ADAAA, then she must be substantially limited in these tasks.   Ms. Overton cannot then turn around and say that Seaborn violated the ADAAA by refusing to let her engage in these very same tasks.   Second, her requested accommodations are not reasonable because they would have

shifted more work to other employees.  An employer does not have to create a new position or burden co-workers in order to reasonably accommodate an employee. *Turco v. Hoeschst Cleanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996).   Third, Seaborn's apparent accommodation, to provide 6-hours of leave, was by definition reasonable.[4] *Amsel v. Texas Water Dev. Bd.*, 464 F'Appx. 395, 400 (5th Cir. 2012) (finding that statute did not require employers to provide indefinite leave).

    *b.  Disability Discrimination Claim*

Ms. Overton also alleges that she was terminated because she was disabled in violation of the ADAAA's anti-discrimination provisions.   Ms. Overton has no direct evidence of discrimination, and therefore this claim is analyzed under the *McDonnell Douglas* framework. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276 (5th Cir. 2000).  Ms. Overton  has the burden of making out a prima facie case by showing that: (1) she was disabled, (2) she was qualified for the job, (3) she was subject to an adverse employment action on account of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. *McInnis*, 207 F.3d at 276; *Bleak v. Providence Health Ctr.*, 454 F.App'x. 366, 368 (5th Cir. 2011).  If Ms. Overton can show a prima facie case, the burden shifts to Seaborn to articulate a legitimate, non-discriminatory reason for her termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If Seaborn meets this burden, then Ms. Overton must show that Seaborn's alleged non-discriminatory reason was a pretext for discrimination in order to defeat summary judgment. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

---

[4] Ms. Overton has produced no evidence showing that Seaborn did not intend to permit her to take 6 hours of leave after her allotted two hours of work were complete. The record indicates that Seaborn consistently permitted Ms. Overton to take entire days off to address her condition.

In this case, Ms. Overton has failed to establish a prima facie case.  Ms. Overton has not provided any evidence showing that Seaborn treated her less favorably than a similarly situated non-disabled employee.  Thus, she cannot prove one of the elements of a prima facie case and her claim fails as a matter of law.  In response, Ms. Overton cites to *McInnis* and argues that:

> Instead of examining the question of whether McInnnis was able to prove that he was treated less favorably than a non-disabled employee, the Court of Appeals analyzed the evidence tending to answer the question 'Was McInnis terminated because of his disability?' In answering that question, the Court examined the evidence given for McInnis' termination and found that summary judgment evidence did not support either of the reasons stated.

Doc. No. 24 at ¶ 24.  To the extent that Plaintiff is arguing that *McInnis* relieved her of the burden to show that she was treated less favorably than a non-disabled employee, the Court finds this argument meritless.  In *McInnis*, the Fifth Circuit reiterated that a plaintiff must show that he was treated less favorably than a comparator. *McInnis*, 207 F.3d at 279.  The only issues on appeal were: 1) whether the plaintiff was disabled; and 2) whether he was terminated because of that disability.  *Id.*

Even if Ms. Overton could establish a prima facie case, Seaborn has provided sufficient evidence of a legitimate non-discriminatory reason for her termination.  Viewing the evidence most favorably to Ms. Overton, her own testimony establishes that she had a confrontation with Seaborn's clients at Lackland.[5]  When the dispute arose on January 26 over how to interpret Ms. Overton's restrictions, Ms. Overton admits that she was upset.  Overton Dep. at 85.  Specifically, she told Seaborn's clients that she didn't trust them and did not want to talk with them when they asked her to discuss her restrictions on speaker phone with her boss, Ms. Amadio. Overton Dep.

---

[5] Ms. Overton points out that the parties have differing accounts of this confrontation. In addition, she notes that there are discrepancies between the declarations given by T.Sgt  Furlough and MSgt Rea and their deposition testimony.  These minor discrepancies do not create a genuine fact issue because Ms. Overton's own account of the confrontation establishes a legitimate, non-discriminatory reason for her termination.

at 85.  The Fifth Circuit has held that "the failure of a subordinate to follow a direct order of a supervisor is a legitimate non-discriminatory reason for discharging that employee." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 178 F. 3d 164, 167 (5th Cir. 1999).  Here, Ms. Overton did not disobey a supervisor, but a client.  The kind of insubordination at issue in *Chaney* can sometimes be rectified without damage to the business.  However, when a government contractor such as Ms. Overton refuses to obey a legitimate order to discuss her own medical restrictions and then questions the integrity of her government clients, an employer such as Seaborn is put in at least some danger of losing future business.  Accordingly, Seaborn's stated reason for terminating Ms. Overton is legitimate.  Moreover, Ms. Overton has not offered any evidence to show that this was a pretext for discrimination.

### 2.  Section 451 Worker's Compensation Claim

Under Texas law, an employer is prohibited from discharging or otherwise discriminating against an employee because he or she filed a workers' compensation claim. TEX. LAB. CODE ANN. § 451.001.  "To prove a prima facie case under this anti-retaliation statute, a plaintiff must establish that he, in good faith, filed a workers' compensation claim, and there exists a causal connection between the filing of the claim and the discharge or other act of discrimination." *Dallas County v. Holmes*, 62 S.W.3d 326, 329 (Tex.App.—Dallas 2001, no pet.) (citing *Continental Coffee Products v. Cazarez*, 937 S.W. 2d 444 (Tex. 1996)).  In *Cazarez*, the Texas Supreme Court held that the standard for causation is that "the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Cazarez*, 937 S.W.2d at 451.[6]  Causation may be established by direct or circumstantial

---

[6] The parties dispute whether the Texas Supreme Court adopted a "but-for" causation standard with this language. Ms. Overton argues that the Court left the possibility open that a plaintiff could recover with a lesser showing of

evidence. *Id.*   To establish causation by circumstantial evidence, a plaintiff must show: (1) knowledge of the compensation claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment of the injured employee in comparison to similarly situated employees; and (5) evidence that the stated reason for discharge was false. *Id.*

Ms. Overton argues that her supervisor, Jackie Amadio, "knew about her claim … and expressed a negative attitude not only towards Ms. Overton's injury but also toward her claim, and that the stated reason for Ms. Overton's discharge is false." Overton Dep. at 144.   This is a conclusory allegation that is insufficient to defeat a motion for summary judgment.  As with her ADAAA claim, Ms. Overton has not shown any evidence of a similarly situated employee who received more favorable treatment.   Even assuming, for the sake of argument, that such an individual exists, Ms. Overton still has not established a prima facie case.   First, Ms. Overton admitted that she did know of any policy that Seaborn violated. Overton Dep. at 170.   Second, Ms. Overton has provided no evidence that Seaborn ever expressed a negative attitude towards her worker's compensation claim or her injury. In fact, the evidence tends to show the opposite inasmuch as Seaborn provided Ms. Overton with repeated leave despite not being legally obligated to do so.[7] Moreover, Ms. Amadio claims that she was the one who opened a worker's compensation claim on Ms. Overton's behalf after her injury occurred. Doc. No. 20 at X.   Ms. Overton has neither fully alleged the elements of a § 451 claim nor provided sufficient evidence to raise a genuine issue of material fact.   Accordingly, this claim is dismissed.

---

causation.  Doc. No. 24.  However, the Court need not resolve this question of Texas law in order to address Ms. Overton's claim.
[7] Seaborn is too small of a company to come within the scope of the Family and Medical Leave Act.

## CONCLUSION

In light of the foregoing analysis, there are no genuine issues of material fact to preclude summary judgment. Accordingly, Seaborn's motion is GRANTED. Doc. No. 20.  The Clerk is directed to CLOSE this case and issue a judgment that Plaintiff take nothing on her claims, which are hereby DISMISSED ON THE MERITS.  Defendant is awarded costs of court and shall file a Bill of Costs in accordance with the local rules.

SIGNED this 27th day of November, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

13